**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BROOKE HINTON<br>3001 Secane Place, Apt. 1<br>Philadelphia, PA 19154<br><br>Plaintiff,<br>v.<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street, 17th Floor<br>Philadelphi, PA 19102<br><br>Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Brooke Hinton (*hereinafter* referred to as “Plaintiff,” unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against the City of Philadelphia (*hereinafter* referred to as “Defendant”) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.) and the Family and Medical Leave Act (“FMLA” - 29 U.S.C. §§ 2601, *et. seq*.). Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant’s unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights violations under the ADA and the FMLA. There lies supplemental and/or ancillary jurisdiction over any of Plaintiff’s state-law claims (following

administrative exhaustion), as they may be amended herein and would arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**<u>PARTIES</u>**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. The City of Philadelphia ("Defendant") is the largest city in Pennsylvania and the sixth-most populous city in the United States. Defendant is incorporated as a first-class municipality under Pennsylvania law(s).

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant on or about March 20, 2023; and in total, Plaintiff was employed by Defendant for approximately three (3) years.

12. Plaintiff worked for Defendant in a full-time capacity, and she was employed as a Clerk (level) 2.

13. Plaintiff has and continues to suffer from disabilities, including but not limited depression, obsessive-compulsive disorder ("OCD"), anxiety and panic disorder. Plaintiff has treated with her primary care physician, a psychiatrist, and other medical personnel over a long period of time (and with varying forms of medical treatment). Plaintiff has not specified all diagnoses or complications herein, but rather, a summary of conditions impacting her while employed.

14. Commencing in or about mid-June of 2024, Plaintiff was approved (by Defendant's Human Resources Department) to utilize leave under the Family and Medical Leave Act ("FMLA") on an intermittent basis. Defendant's approval via letter stated in pertinent part:

> Effective **June 19, 2024**, an FMLA eligibility audit showed that you have met the 1250 hours requirement and have **60** applicable FMLA days remaining. The certification from your physician, dated **June 19, 2024**, certified that you need to use FMLA *intermittently*.
>
> Your physician has stated that frequency of intermittent usage of FMLA should not exceed more than **two (2) times a month,** and your flare-ups may last up to **two (2) days per occurrence**.

15. Plaintiff was initially approved for absences twice per month, each absence of which could span two (2) days per episode or flareup.

16. Unfortunately, Plaintiff was having more significant flareups and complications associated with her health in late 2024 and through 2025. This prompted her to provide additional medical information to Defendant and to seek approval for more expansive FMLA usage (via intermittent leave).

17. Plaintiff submitted additional medical information, and Defendant's human resources personnel approved Plaintiff for *more intermittent FMLA absenteeism* (as needed). For example, an August 22, 2024 letter to Plaintiff (from Defendant's Human Resources personnel) stated in pertinent part:

Effective **June 19, 2024**, an FMLA eligibility audit showed that you have met the 1250 hours requirement and have **52** applicable FMLA days remaining. The certification from your physician, dated **August 20, 2024**, certified that you need to use FMLA *intermittently.*

Your physician has stated that frequency of intermittent usage of FMLA should not exceed more than **five (5) times a month,** and your flare-ups may last up to **two (2) days per occurrence**.

18. Plaintiff's FMLA usage increased in late 2024 as aforesaid. By letter dated March 12, 2025, Defendant's Human Resources approved a third increase in Plaintiff's intermittent FMLA usage. The March 12, 2025, letter stated in pertinent part:

Effective **March 12, 2025,** an FMLA eligibility audit showed that you have met the 1250 hours requirement and have **16** applicable FMLA days remaining. The certification from your physician, dated **March 3, 2025,** certified that you need to use FMLA *intermittently.*

Your physician has stated that frequency of intermittent usage of FMLA should not exceed more than **six (6) times a month,** and your flare-ups may last up to **two (2) days per occurrence.**

19. The March 12th grant of six (6) periods of absence per month for "two (2) days per occurrence" (as necessary) was premised upon Plaintiff's request for an increase in FMLA intermittent usage prior to March 3, 2025, and based upon her submission of additional FMLA documentation on March 3, 2025.

20. During her first few years, Plaintiff had prior management supervising her (not specified herein by name). But from in or about December of 2024 – December of 2025, Plaintiff was primarily supervised by Quintoria Smith ("Smith"). Smith upon information and belief has worked for Defendant for approximately a decade (having started her own employment as a Clerk Typist 1 in or about 2015).

21. Plaintiff began working under Smith as aforesaid as a result of transferring from the Office of Administrative Review ("OAR") to the Training and Development Office ("TDO").

22. During late 2024 through March of 2025 (leading up to issuance of a PIP), Plaintiff estimates that Quinn made *well over a dozen discriminatory comments* to her about her FMLA usage. By way of examples, Quinn was staying things like:

- I can't believe you called out on __ day or __ days, expressing concerns about something being due or a strained workload (even though Plaintiff used FMLA which was known to Quinn);

- "We are short staffed, when you call out it is a reflection on your credibility, your accountability, and your reliability" (even though Plaintiff used FMLA which was known to Quinn);

- "You are making me look bad when you call out even if you are using FMLA" because we need to get things done timely.

- "You can't complete your work with this kind of calling out" (even though Plaintiff used FMLA which was known to Quinn); and

- Other iterations of these types of comments, as well asking if she really needs to use so much FMLA, if Plaintiff can handle the job, and if Plaintiff can work with having so many health issues. [These were of course discriminatory and retaliatory remarks about Plaintiff's health and FMLA needs]

23. Plaintiff needed to use FMLA intermittent leave for three (3) consecutive days on March 3rd, March 4th, and March 5th of 2025 (although she used FMLA significantly in prior month as well). Examples of her communications regarding use of three (3) consecutive FMLA days are set forth below:




24. Plaintiff was placed on a Performance Improvement Plan (commonly referred to as a "PIP") dated March 5, 2026.

25. Prior to being presented with the PIP dated March 5, 2026, Plaintiff:

(1) Took consecutive days of FMLA leave *immediately prior* to receiving the March 5th, 2025, PIP (*see supra*);

(2) Had been using FMLA more extensively in the months leading up to the March 5th, 2025, PIP (entirely separate and apart from just the days leading up to PIP issuance);

(3) Had been enduring discriminatory comments about her FMLA usage from and by Smith (*see supra*);

(4) Had been enduring really significant hostility and animosity from Quinn for using FMLA time off in demeanor, interactions, and tone; and

(5) Plaintiff had discussed her worsening health and anticipated increase in medical time off for flare ups with Smith, as well as sharing some details about her health to be transparent (not believing she may later be placed on a PIP).

26. It is well established that the use of intermittent FMLA leave is simultaneously a protected form of medical accommodation under the ADA. *See e.g. Smith v. N. Shore-Long Island Jewish Health Sys*., 286 F. Supp. 3d 501, 525 (E.D.N.Y. 2018)("[T]he Court finds [plaintiff] to be qualified within the meaning of the ADA with the reasonable accommodation of intermittent leave."); *Hall v. Wash. Metro. Area Transit Auth*., 2020 U.S. Dist. LEXIS 183477, *36 (D.D.C. 2020)(counting disability-related absences against plaintiff can constitute denial of a reasonable accommodation); *Westbrooks v. Baltimore Cty.,* 2019 U.S. Dist. LEXIS 140647, *34 (D. Md. 2019)(reasonable jury could conclude employer failed to consider reasonable accommodation of absenteeism for employee).

27. Prior to the March 5th PIP issuance, Plaintiff otherwise never received such discipline and performed her role(s) very well.

28. The March 5, 2025 PIP was a two-page form that: (a) included an introduction asserting Plaintiff was (allegedly) "counseled" before the PIP issuance which was a false assertion within the documentation; and (b) consisted of high-level *generalities* about being more detailed, tracking assignments, and other generic assertions without specific examples of actual deficiencies.

29. The PIP specified that Plaintiff's performance would be monitored by both Sharonn Mitchell ("Mitchell" – a Director) **and** Quinn. And it specified the PIP was for a "90-day period, from March 3, 2025, to July 7, 2025."

30. On or about July 22, 2025, Plaintiff was presented with an annual review that identified her in most areas as "unsatisfactory" prepared and/or signed by Quinn and Mitchell. The annual review documented concerns with her ADA / FMLA absences as follows:

- "Dependability and accountability are essential for this role"
- "Dependability is especially important when absences on Mondays or Fridays coincide with critical project deadlines." [This was in reference to Plaintiff's FMLA intermittent leave, as Quinn disliked usage on Mondays or Fridays even if for health reasons]
- Plaintiff is expected to improve in "expectations for reliability."

31. Even through mid-2025, Quinn continued to complain to Plaintiff that her FMLA usage was interfering with her ability to timely or effectively perform her role.

32. If for example Plaintiff was missing 2 or 3 days in a particular week for a medical episode, Defendant's management had an unlawful practice of having nobody assist, nobody follow up with Plaintiff's work *and then holding her accountable for not getting enough work done (or for being supposedly untimely).* This was of course *per se illegal and a series of attempts to dissuade Plaintiff from taking medical time off from work as needed.*

33. By letter dated August 8, 2025, Plaintiff was informed by Smith her PIP (that Plaintiff understood had ended on July 7th) was allegedly being extended "from August 8, 2025, to October 7, 2025."

34. Plaintiff politely protested to Quinn that she didn't believe an extended PIP was appropriate, explaining she had completed the prior PIP, did an excellent job, and was not given negative feedback during any dialogue about the PIP. Plaintiff felt blindsided by the purported

"extension." Quinn made discriminatory remarks to Plaintiff telling Plaintiff the extension was necessary because "your FMLA is interfering with your ability to complete your job effectively."

35. The August 8th "Extension" of the PIP contained references to Plaintiff's absenteeism *that was solely for medical reasons* (and protected under the FMLA and ADA). For example, Quinn wrote:

Despite multiple efforts to support your progress, including access to various resources, training, and ongoing guidance from the department, core performance concerns remain unresolved. Specifically, there have been ongoing concerns regarding the consistent submission of required weekly progress reports, timely follow-up on incomplete work and assigned tasks, and maintaining accountability, particularly during periods of absence. As a result, the department has decided to extend your PIP for an additional 60 days, from **August 8, 2025, to October 07, 2025.**

36. Plaintiff was point-blank told by Quinn her extension was necessitated by her usage of FMLA, and then Quinn documented alleged performance concerns arising from her "periods of absence." Quinn was so frustrated with Plaintiff's FMLA usage, she also put in the (August) Extension (of the PIP) as follows:

- **Proactive Task Management and Accountability:**
  You are expected to follow up on all incomplete work in a timely manner. If you are out of the office, it is your responsibility to provide your manager with an updated status on all pending tasks and assignments.

37. Plaintiff's PIP was thereafter continually extended, typically for 30-day periods (until her removal from work entirely, as discussed *infra*). Plaintiff was being proverbially beaten down with PIP plans or extensions that: (a) were issued to stop her from using as much FMLA; (b) to dissuade her from using her ADA and FMLA protected rights; and (c) the abusive treatment was causing her even more exacerbations and flareups with her disorders.

38. From mid to late November of 2025, Plaintiff was providing medical documentation such as the following (from Jefferson Health dated November 19, 2025) to support her request for a hybrid work-from-home schedule (for medical reasons):[1]

To Whom it May Concern:

I recommend that patient work from home three days a week due to severe Generalized Anxiety Disorder, Panic Attacks, and OCD.

If you have any questions or concerns, please don't hesitate to contact me.

39. In or about December of 2025, Plaintiff was granted (via Memorandum dated December 8, 2025) a separate medical accommodation (apart from intermittent FMLA leave, also an ADA accommodation) to be permitted to telecommute (or to work from home) for part of her work schedule. The grant of the accommodation from Human Resources stated in pertinent part:

This memo is to inform you that your request for accommodation under the Americans with Disabilities Act (ADA) has been approved. After careful consideration, the Department of Revenue has granted your request for a hybrid work schedule of two days in the office and three days remote.

Your required in-office days will be **Mondays and Fridays**. We expect you to continue managing your workload effectively and to coordinate any necessary adjustments with your manager to ensure smooth operations. Your commitment to maintaining productivity and collaboration is appreciated. This

40. Quinn kept making Plaintiff in constant fear of her job so much so that her disabilities were worsening to the point of her need a partial at-home medical accommodation. When it would later become evident that the pretextual PIPs would not stop Plaintiff's ongoing of FMLA usage, Plaintiff would be eventually terminated (also discussed *infra*).

41. Plaintiff did not agree any PIP or extensions were warranted, as she was being accused of subjective concerns, generalities, and total nitpicking. And while being issued PIP-

[1] Plaintiff performed a job that she could easily and without any burden to Defendant perform from her home (or on a remote basis in general).

related documentation, Plaintiff was often told her FMLA (also a form of ADA accommodation) was making her untimely and ineffective.

42. Defendant's management was literally finding any rationale, however absurd or petty, to criticize Plaintiff. ***To give just one example (of so many)***, Plaintiff was criticized in an email dated December 23, 2025, wherein she was told although she had many "positive developments," *during her PIP extension* she should not have sent "an urgent email" (as an email can be marked urgent) to a particular person regarding ethics training (implying this was an example of her supposedly not complying with her PIP expectations).

43. Plaintiff merely indicated the email was urgent to Julia Sheppard ("Sheppard") from Defendant's Ethics Department because: (a) Sheppard had ignored numerous emails wherein Plaintiff was asking if an ethics training was still proceeding as scheduled (as Plaintiff was required to follow up and verify such information); and (b) the class / training was about to imminently take place (wherein participants had to confirm or be notified). Plaintiff was criticized for merely following up and doing her job, as Defendant was in a rush to document anything it could conjure as a supposed concern. It was constant nitpicking and paper trail generation.

44. Plaintiff was informed by McCaskill that as of December of 2025, Mitchell was "assum[ing] supervisory responsibility" of Plaintiff. This seemed very odd to Plaintiff in that both Mitchell and Quinn were already intimately involved with many aspects of her review and PIP process throughout 2025. To Plaintiff, they had already both been overseeing as management.

45. On or about January 16, 2026, Plaintiff was emailed by Tymeka McCaskill ("McCaskill" - Defendant's HR Business Partner). McCaskill also confirmed Plaintiff's

management had ongoing complaints about Plaintiff's absences (which were supposed to be ADA and FMLA protected). In her email to Plaintiff, she stated in pertinent part:

> I am writing to follow up on our meeting held on Tuesday, January 13, regarding Brooke Hinton's Performance Improvement Plan. During that meeting, we discussed the conclusion of the most recent 30-day PIP extension, which ended in early January, and reviewed the supervisor's summary of performance issues that occurred during that period.
>
> As shared during the meeting, the supervisor documented ongoing concerns related to attendance

46. As of on or about February 13, 2026, Plaintiff was issued a 30-day unpaid suspension under the pretext that: (a) she was not successfully performing her role; and with the recommendation (b) she should consider resigning during the 30-day suspension.

47. On or about March 24, 2026, Plaintiff was terminated after not being returned from her suspension via a "Notice of Dismissal" stating in pertinent part:

> **You are hereby notified that, effective March 24, 2026, at the close of business, you are dismissed from your position with the City of Philadelphia, as referenced above, for the following reasons:**
>
> **This action follows your continued failure to meet the performance standards and essential duties of the Office Clerk 2 position, despite prior coaching, supervisory guidance, and placement on a formal Performance Improvement Plan beginning March 3, 2025. The plan included both a 60-day extension and a final 30-day extension to allow additional time for improvement. Despite these opportunities, the same categories of performance deficiencies persisted, including issues related to task completion, adherence to established procedures, and the independent execution of assigned duties.**

48. Between December 2024 through nearly all of 2025, Plaintiff was the recipient of ongoing comments about her medical absences preventing her from doing her job effectively and much of this was documented by Defendant as well. During several instances in this timeframe, Plaintiff had engaged in statutorily protected activities by expressing concerns that she felt her health or FMLA needs were being unfairly held against her for unwarranted claims about her

performance. Plaintiff complained to Quinn about such concerns and HR management (to no avail).

49. Plaintiff was ultimately suspended and terminated pretextually because of her health, her accommodation needs, and her complaints of discriminatory or retaliatory treatment.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**([1] Disability Discrimination; and [2] Retaliation)**

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. Plaintiff suffered the following adverse actions: (1) a hostile work environment; (2) warnings, a PIP, a review and discipline; (3) a suspension; and (4) termination. These are hereinafter referred to as the "adverse actions."

52. The adverse actions taken against Plaintiff were because of her health, accommodations requests, complaints of discriminatory mistreatment, and because of her perceived or regarded-as health.

53. Defendant's unlawful discrimination and retaliation constitutes violations of the ADAAA.

**Second Cause of Action**
**Family and Medical Leave Act ("FMLA")**
**Interference and Retaliation**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff suffered the following adverse actions: (1) a hostile work environment; (2) warnings, a PIP, a review and discipline; (3) a suspension; and (4) termination. These are hereinafter referred to as the "adverse actions."

56. The adverse actions taken against Plaintiff were because of her FMLA usage, to dissuade her from FMLA usage, to interfere with her ongoing usage, and to retaliate against Plaintiff for her federally protected exercise of her rights under the FMLA.

57. Defendant's actions as outlined in this lawsuit constitute both interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, retirement benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: September 28, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Brooke Hinton | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/28/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:________________ Judge:________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:________________

**B.** ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):____________
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HINTON, BROOKE

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

CITY OF PHILADELPHIA

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA and the FMLA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 9/28/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______